UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JENNIFER JEAN NAMOHALA, | ) |
| | ) |
| Plaintiff, | ) Civil No. _____ |
| | ) |
| v. | ) COMPLAINT FOR DAMAGES |
| | ) |
| KAISER FOUNDATION HEALTH PLAN, INC.; | ) |
| KAISER FOUNDATION HOSPITALS; | ) JURY TRIAL DEMANDED |
| KAISER PERMANENTE MEDICAL GROUP; | ) |
| JOHN DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

## NATURE OF THE ACTION

1. This is a civil rights and medical malpractice action arising from Defendants' discriminatory denial of standard medical care to Plaintiff based on her status as a Medicaid (Hawaii Quest) beneficiary, and their negligent performance of a surgical procedure that resulted in a life-threatening infection.

2. Plaintiff brings claims under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, for discrimination in healthcare based on her insurance status, and supplemental state law claims for medical malpractice, negligence, and lack of informed consent.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 18116(a).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

6. Plaintiff JENNIFER JEAN NAMOHALA is a resident of Hawaii and at all relevant times was a beneficiary of Hawaii Quest, Hawaii's Medicaid program.

7. Defendant KAISER FOUNDATION HEALTH PLAN, INC. is a California corporation doing business in Hawaii and operating healthcare facilities that receive federal financial assistance through Medicare and Medicaid programs.

8. Defendant KAISER FOUNDATION HOSPITALS is a California corporation operating Kaiser Moanalua Medical Center and other facilities in Hawaii that receive federal financial assistance.

9. Defendant KAISER PERMANENTE MEDICAL GROUP is a medical group providing services at Kaiser facilities in Hawaii.

10. Defendants DOES 1-10 are individuals and entities whose identities are currently unknown but who participated in the events described herein.

# FACTUAL ALLEGATIONS

### A. Plaintiff's Medical Condition and Insurance Status

11. Plaintiff was diagnosed with Stage II-C endometrial cancer requiring urgent chemotherapy treatment.

12. As part of her cancer treatment, Plaintiff required placement of a port catheter for chemotherapy administration.

13. Plaintiff has a terminal diagnosis with limited life expectancy. Her oncologist has indicated her prognosis is measured in months, not years, making expedited resolution of this matter essential to achieving meaningful justice. Plaintiff's deteriorating health necessitates expedited discovery and trial settings to ensure she can participate fully in these proceedings and obtain relief within her lifetime.

14. At all relevant times, Plaintiff was insured through Hawaii Quest, Hawaii's Medicaid program, which is funded by federal and state funds.

### B. The May 12, 2025 Port Catheter Insertion

15. On May 12, 2025, Plaintiff presented to Kaiser Moanalua Medical Center for insertion of a port catheter.

16. Plaintiff was prepped for the procedure and the sterile field was established at approximately 8:00 a.m.

17. After Plaintiff was prepped and draped in sterile fashion, she was left alone in the operating room for approximately 30 minutes while waiting for the physician to arrive.

18. During this 30-minute period, the sterile field was compromised by:

   a. Visible dust particles falling from the ceiling onto the sterile field;

   b. Multiple staff members entering and exiting the OR;

   c. No medical personnel maintaining or monitoring the sterile field.

4

19. The procedure was performed by a Physician Assistant (PA-C) without Plaintiff's knowledge or consent, as she was not informed that a PA rather than a physician would be performing the surgery.

20. Within five days of the procedure, Plaintiff developed a severe MSSA (Methicillin-sensitive Staphylococcus aureus) bloodstream infection.

21. The infection resulted in: a. Hospitalization from May 17-24, 2025; b. Emergency removal of the infected port; c. Six weeks of IV antibiotic therapy; d. Delay of critical chemotherapy treatment; e. Ongoing cardiac complications from sepsis.

### C. Pattern of Discrimination Based on Medicaid Status

22. Throughout her treatment at Kaiser facilities, Plaintiff experienced systematic discrimination based on her Quest/Medicaid insurance status:

23. **Denial of Sedation for Painful Procedures**: Prior to her hysterectomy, Plaintiff was denied sedation for an extremely painful uterine biopsy procedure, despite sedation being standard care for privately insured patients undergoing the same procedure.

24. **Inferior Antibiotic Delivery Method**: When receiving IV antibiotics at home, Plaintiff was forced to use IV push syringes requiring three daily 30-minute manual administrations instead of standard IV balls that would allow mobility during treatment.

5

25. When Plaintiff asked why she couldn't have IV balls like other patients, the nurse confirmed they were available. When Plaintiff directly asked, "Is it because I'm a Medicaid patient?" the nurse remained silent and did not answer, then turned away to look in the mirror. This incident was witnessed by Plaintiff's friend Sonia.

26. **Limited Home Healthcare**: Plaintiff was told she could only receive home health visits twice per week. When Plaintiff and her daughter protested that the physician had ordered every-other-day dressing changes for the infected port site, the home health nurse explicitly stated: "well for Medicare and Medicaid patients, this is how we do it based on their payment for service."

27. **Life-Threatening Negligence**: During Plaintiff's hospitalization, a nurse attempted to have Plaintiff push saline through an IV line filled with air, which could have been fatal. When Plaintiff refused, stating "I can't, there's nothing but air in my line and it'll go straight to my heart," another nurse had to intervene. This incident was witnessed by Sonia.

28. **Medication Administration Without Consent**: A nurse administered Fentanyl via IV push without informing Plaintiff or obtaining consent, only revealing what medication had been given after completing the injection. When Sonia questioned this practice, the nurse belatedly identified the medication.

29. **Dismissal of Serious Symptoms**: When Plaintiff presented with sepsis symptoms, Kaiser providers dismissed her concerns as "depression" rather than investigating potential post-surgical complications. When Plaintiff later developed cardiac symptoms, her primary care physician took a week to respond and dismissed her concerns despite

abnormal cardiac monitoring results.

### D. Pattern of Racial Discrimination Based on Name and Appearance

30. Throughout her hospitalization, Plaintiff experienced daily racial discrimination based on the disconnect between her Hawaiian surname (Namohala) and her white appearance:

31. Every day, nurses and housekeeping staff would enter saying "Mrs. Namohala..." then upon seeing her would comment: "OH - you must've married in" or "OH - you have a local name but you're not local." This occurred "literally every day" per Plaintiff.

32. Staff displayed visible disappointment and changes in demeanor upon discovering Plaintiff was white rather than Native Hawaiian, resulting in a noticeable lack of caring in their treatment.

33. Multiple nurses attempted to avoid providing care, with three different nurses asking if Plaintiff could change her own bandages on a 1-inch deep infected port site.

34. These discriminatory practices represent a pattern and practice of providing substandard care to Medicaid beneficiaries while providing standard care to privately insured patients for identical conditions and procedures, compounded by racial discrimination against a white minority patient in Hawaii.

# CAUSES OF ACTION

## COUNT I: VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT

(Against All Defendants)

35. Plaintiff incorporates all preceding paragraphs.

36. Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), provides that individuals shall not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity receiving Federal financial assistance.

37. Defendants receive substantial Federal financial assistance through Medicare and Medicaid programs.

38. Defendants discriminated against Plaintiff based on her Medicaid insurance status by: a. Denying her standard pain management (sedation) for painful procedures; b. Providing inferior methods of medication delivery; c. Limiting her access to home healthcare services; d. Dismissing serious medical symptoms; e. Providing a lower standard of care than that provided to privately insured patients.

39. This discrimination was intentional and part of a pattern and practice of treating Medicaid beneficiaries as second-class patients.

40. As a direct and proximate result of Defendants' discrimination, Plaintiff suffered physical pain, emotional distress, delayed cancer treatment, and increased risk of cancer

progression.

## COUNT II: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

(Against All Defendants)

41. Plaintiff incorporates all preceding paragraphs.

42. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination against qualified individuals with disabilities in programs receiving federal financial assistance.

43. Plaintiff is a qualified individual with a disability, having been diagnosed with Stage II-C endometrial cancer, which substantially limits major life activities including cellular growth, reproductive functions, normal immune system function, and major bodily functions.

44. Defendants receive federal financial assistance through Medicare and Medicaid programs.

45. Defendants discriminated against Plaintiff based on her disability and/or her association with disability through Medicaid by:

a. Failing to provide reasonable accommodations for her disability-related needs, including:

>> i. Denying medically necessary sedation for painful procedures despite her cancer diagnosis increasing pain sensitivity
>
> > ii. Refusing to accommodate her need for mobility during antibiotic treatment by denying IV balls
>
> > iii. Failing to accommodate her compromised immune system by maintaining sterile protocols
>
> > iv. Denying accommodation of every-other-day wound care despite infection risk to immunocompromised patient
>
> b. Providing different and inferior services to similarly situated individuals with disabilities who have private insurance;
>
> c. Utilizing eligibility criteria (Medicaid status) that screen out individuals with disabilities;
>
> d. Failing to make reasonable modifications to policies when necessary to avoid discrimination.

46. Defendants failed to engage in any interactive process to determine appropriate accommodations for Plaintiff's disability-related medical needs, instead categorically denying accommodations based solely on insurance status.

47. Defendants' discrimination was intentional and/or demonstrated deliberate indifference to Plaintiff's federally protected rights.

**COUNT III: VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT**

10

(Against All Defendants)

48. Plaintiff incorporates all preceding paragraphs.

49. Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, prohibits discrimination on the basis of race, color, or national origin in programs receiving federal financial assistance.

50. While Plaintiff is white, she is a racial minority in Hawaii where whites comprise approximately 25% of the population.

51. Defendants' discrimination against Medicaid beneficiaries has a disparate impact on racial minorities in Hawaii, including whites, who are disproportionately enrolled in Quest/Medicaid.

52. Defendants maintain facially neutral policies that result in disparate treatment based on insurance status, which serves as a proxy for race in Hawaii's unique demographic context.

53. This disparate impact lacks substantial legitimate justification and less discriminatory alternatives exist.

## COUNT IV: MEDICAL MALPRACTICE/NEGLIGENCE

(Against All Defendants - Supplemental State Law Claim)

54. Plaintiff incorporates all preceding paragraphs.

55. Defendants owed Plaintiff a duty to provide medical care in accordance with the applicable standard of care.

56. Defendants breached this duty by: a. Failing to maintain sterile field integrity during the port insertion procedure; b. Allowing a 30-minute delay after sterile prep with no monitoring; c. Permitting environmental contamination of the sterile field; d. Failing to re-prep the surgical site after the prolonged delay; e. Allowing inadequately supervised personnel to perform the procedure.

57. The applicable standard of care requires that once a sterile field is established, the procedure must commence within 2 minutes to prevent contamination.

58. As a direct and proximate result of Defendants' negligence, Plaintiff developed a life-threatening MSSA infection requiring hospitalization, port removal, extended antibiotic therapy, and delay of cancer treatment.

## COUNT V: LACK OF INFORMED CONSENT

(Against All Defendants - Supplemental State Law Claim)

59. Plaintiff incorporates all preceding paragraphs.

60. Defendants had a duty to obtain Plaintiff's informed consent before the port insertion procedure, including disclosure of who would perform the procedure.

61. Defendants failed to inform Plaintiff that a Physician Assistant rather than a physician would perform her surgery.

62. Had Plaintiff known a PA would perform the procedure, she would not have consented.

63. As a result of this lack of informed consent, Plaintiff was deprived of her right to make informed decisions about her medical care.

## COUNT VI: NEGLIGENT SUPERVISION

(Against Kaiser Foundation Health Plan and Kaiser Foundation Hospitals - Supplemental State Law Claim)

64. Plaintiff incorporates all preceding paragraphs.

65. Defendants had a duty to properly supervise Physician Assistant Jenny Mendez during the port insertion procedure.

66. Hawaii law requires physician supervision of PAs performing invasive procedures.

67. Defendants breached this duty by: a. Allowing Dr. Chen to be absent during the 30-minute sterile field breach; b. Permitting only "key portions" supervision rather than continuous oversight; c. Failing to ensure physician presence during critical sterile field

maintenance; d. Allowing unsupervised PA practice beyond scope of competence.

68. As a direct result of this negligent supervision, Plaintiff suffered infection and injury.

## COUNT VII: VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

(Against All Defendants - Supplemental State Law Claim)

69. Plaintiff incorporates all preceding paragraphs.

70. At all relevant times, PA Jenny Mendez and Dr. Eric Chen were employees or agents of Defendants acting within the scope of their employment.

71. Defendants are vicariously liable for the negligent acts and omissions of their employees and agents.

72. The negligent acts of Mendez and Chen are imputed to Defendants under the doctrine of respondeat superior.

## COUNT VIII: CORPORATE NEGLIGENCE

(Against Kaiser Foundation Health Plan and Kaiser Foundation Hospitals - Supplemental State Law Claim)

73. Plaintiff incorporates all preceding paragraphs.

74. Defendants had a non-delegable duty to ensure competent medical care at their facilities.

75. Defendants breached this duty by: a. Failing to establish adequate supervision protocols for PAs; b. Permitting "key portions" supervision model for high-risk procedures; c. Failing to ensure adequate staffing to prevent 30-minute procedural delays; d. Maintaining policies that allow substandard care for Medicaid patients.

76. These systemic failures directly caused Plaintiff's injuries.

## COUNT IX: BREACH OF FIDUCIARY DUTY

(Against All Defendants - Supplemental State Law Claim)

77. Plaintiff incorporates all preceding paragraphs.

78. The physician-patient relationship creates a fiduciary duty of loyalty and care.

79. Defendants breached this fiduciary duty by: a. Placing cost-savings above patient safety; b. Failing to disclose PA involvement in surgical procedure; c. Providing substandard care based on insurance status; d. Concealing the breach in sterile protocol.

## COUNT X: BATTERY

(Against All Defendants - Supplemental State Law Claim)

80. Plaintiff incorporates all preceding paragraphs.

81. Defendants' employee committed battery by administering Fentanyl, a powerful narcotic, via IV push without Plaintiff's knowledge or consent.

82. Plaintiff did not consent to this touching or medication administration.

83. The administration of powerful narcotics without consent constitutes harmful and offensive touching.

84. As a direct result, Plaintiff suffered physical effects ("My world spun out") and lost trust in her medical providers.

## COUNT XI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants - Supplemental State Law Claim)

85. Plaintiff incorporates all preceding paragraphs.

86. Defendants' conduct was extreme and outrageous, including: a. Attempting to have Plaintiff inject air into her IV line, risking death; b. Daily racial comments about her name and appearance; c. Explicit statements that Medicaid patients receive inferior care; d. Administering narcotics without consent.

87. Defendants acted intentionally or with reckless disregard of the probability of causing emotional distress.

88. Plaintiff suffered severe emotional distress, including fear for her life, humiliation from daily discrimination, and determination to "never be hospitalized there again."

89. The conduct was so extreme that it exceeds all bounds of decency in a civilized society.

## COUNT XII: NEGLIGENCE PER SE

(Against All Defendants - Supplemental State Law Claim)

90. Plaintiff incorporates all preceding paragraphs.

91. Federal and state regulations require healthcare facilities to provide care without discrimination based on payment source.

92. Defendants violated these regulations by explicitly providing different standards of care "based on their payment for service."

93. Plaintiff is within the class of persons these regulations were designed to protect.

94. Defendants' violations proximately caused Plaintiff's injuries, including inadequate wound care leading to prolonged infection and suffering.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial, including but not limited to:

1. Past and future medical expenses;
2. Pain and suffering;
3. Emotional distress;
4. Lost life expectancy due to delayed cancer treatment;

B. Award punitive damages against all Defendants for:

1. Willful and intentional discrimination against Plaintiff based on her Medicaid status;
2. Deliberate indifference to Plaintiff's federally protected rights;
3. Reckless disregard for patient safety in maintaining discriminatory policies;
4. Conscious disregard of known risks in violating sterile protocols;
5. Malicious or oppressive conduct in denying standard care based on insurance status;

C. Award reasonable attorneys' fees and costs pursuant to:

1. 42 U.S.C. § 18116 (Section 1557);
2. 29 U.S.C. § 794a (Rehabilitation Act);

D. Enter injunctive relief requiring Defendants to:

1. Cease discriminating against Medicaid beneficiaries;
2. Implement policies ensuring equal treatment regardless of insurance status;
3. Provide training on non-discrimination in healthcare;

    4. Submit to monitoring for compliance;

E. Enter declaratory judgment that:

1. Defendants' policies and practices of providing different standards of medical care based on insurance status violate Section 1557 of the ACA and Section 504 of the Rehabilitation Act;
2. Defendants' stated practice of limiting services "based on their payment for service" constitutes unlawful discrimination;
3. Medicaid beneficiaries are entitled to the same standard of medical care as privately insured patients;
4. Defendants must modify their policies to ensure equal treatment regardless of payment source;

F. Award pre-judgment interest at the maximum rate allowed by law;

G. Award post-judgment interest at the statutory rate;

H. Grant such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to amend this complaint to add class allegations should discovery reveal systematic discrimination affecting similarly situated Medicaid beneficiaries who have been denied standard medical care at Kaiser facilities based on their insurance status.

DATED: Honolulu, Hawaii, August 1, 2025

Respectfully submitted,

/s/ Emily Dresslar

EMILY DRESSLAR, ESQ.
Bar No #11741
Dresslar Law
1200 Ala Moana Blvd, Suite #380
Honolulu, HI 96814
Phone: (808) 796-4897
Email: emilydresslar@gmail.com
Attorney for Plaintiff